FILED
01 NOV 27 PM 3:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV 27 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT E. WRIGHT,                )
                                 )
    Plaintiff,                   )
                                 )   CIVIL ACTION NO.
v.                               )
                                 )   00-AR-2357-S
AMSOUTH BANCORPORATION,          )
                                 )
    Defendant.                   )
                                 )

## MEMORANDUM OPINION

Before this court is the motion for summary judgment filed by defendant, Amsouth Bancorporation ("Amsouth"). Plaintiff, Robert E. Wright ("Wright") brought this action against Amsouth seeking to recover for alleged age related discrimination. Wright originally prayed for relief on four counts, an Age Discrimination in Employment Act ("ADEA") claim, an ADEA pattern and practice claim, a fraud claim and a claim under §6-11-27 of the Code of Alabama.

### Undisputed Facts

Wright was born on May 18, 1943. He was hired by Amsouth in June 1997 as Vice President-Accounting Policy and Research. He was on that day and still is between forty and seventy years old. During a meeting in February 1999, Robert Windelspecht ("Windelspecht"); an Amsouth supervisor, criticized Wright's

1

performance and suggested that he look for employment elsewhere. At Windelspecht's suggestion, Wright, during most of 1999, engaged in an unsuccessful attempt to find another job. In September 1999, Amsouth re-hired Margaret Burks ("Burks"), a former employee who was born on March 4, 1970, at a salary lower than Wright's and gave her a title similar to Wright's. Wright worked at Amsouth until December 1999 and was paid by Amsouth until February 2000. He was terminated.

## Discussion

Wright's complaint contains four separate but related causes of action: an ADEA claim, an ADEA pattern and practice claim, a fraud claim and a claim under §6-11-27 of the Code of Alabama. In his brief opposing summary judgment, Wright "stipulate[s] to the dismissal of" his pattern and practice claim. (Pl.'s Br. in Opp'n to Summ. J. at 23.) This court finds no fault with this deemed dismissal and will grant Amsouth summary judgment on this claim. The ADEA claim, the fraud claim and the §6-11-27 claim remain before the court and each will be discussed in turn.

In order to maintain a cause of action under the ADEA, a plaintiff must file a charge of discrimination with the E.E.O.C. within 180 days of the alleged unlawful practice. 29 U.S.C. § 626(d). If the plaintiff fails to file a charge within this time period, his action is barred. The event which triggers the start

2

of the 180 day clock is not necessarily notice of termination or the last day worked, but rather when "the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Sturniolo v. Sheaffer*, 15 F3d. 1023, 1025 (11th. Cir. 1994)(internal citations omitted). If Wright knew or should have known enough to support a charge of discrimination more than 180 days before he filed his charge of discrimination with the E.E.O.C., he cannot bring an ADEA action against Amsouth. If there is no triable issue of fact regarding this matter, then Amsouth's motion for summary judgment is due to be granted on this count.

As Wright points out, a *prima facie* case of age discrimination under the ADEA consists of showing that the plaintiff "(1) was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job." *Verbraeken v. Westinghouse Electric Corp.*, 881 F. 2d 1041, 1045 (11th. Cir. 1989). The dispositive question as the court considers whether the claim is barred by the statute of limitations is at what point can Wright no longer dispute that he knew or should have known he could meet all four elements. This court will assume that at all times Wright knew his own age and

that he believed he was qualified for the job.  In this case, then, the 180 day question turns on when Wright knew or should have known that he was subject to an adverse action and was replaced by a person outside the protected group, to wit: Burks.

As early as February 1999, Wright knew his job was in peril, and believed that age discrimination was the source of this peril.  (Pl. Depo. at 141-43).  Later that same year, on September 15, Jeff Morris circulated a memo announcing, *interalia*, that Burks would be re-hired as Vice President-Accounting Policy and Research Associate.  This title, minus the word "associate," was Wright's title.  Wright has testified that Amsouth "hired Burks in with my title".  (Pl. Depo. at 153, ln. 7-8).  When Wright read this memo, he either knew, or should have known, that the decision to fire him had been made, and that the potential peril that had stalked him since February had materialized.  At this point, it was no longer a question of if, but when, a pink slip would accompany his direct deposit stub.  Wright has testified that he looked at the hiring of Burks as "things were imminent."  (Pl. Depo. at 153, ln. 8-10).  "I was being pushed out, and somebody was taking my title." *Id.*  This court finds that as a matter of law when a supervisor tells a subordinate that his job is in peril, encourages the imperiled employee to look for work with other employers, and then hires someone for a position whose six word title differs only by the

4

addition of the word "associate" and whose duties are essentially the same,[1] the employee should know that he is about to be fired. If he cannot make such a logical deduction, he is wrong in declaring himself qualified for his job.

On or within a day of the September 15, 1999 memo, Wright should have known that he was going to be fired. Because it is possible that the memo came out or was not delivered until after Wright left work that day and that he did not see it until the next day, the clock started ticking on September 16, 1999, and therefore expired on March 14, 2000. Wright filed his E.E.O.C. charge on March 28, 2000, two weeks too late. Because there is no evidence to dispute the fact that Wright failed to file a timely charge of discrimination, Amsouth's motion for summary judgment as to Wright's ADEA claim is due to be granted.

The next claim that Wright has brought against Amsouth is for fraud under Alabama state law, specifically §6-5-100 of the Alabama Code (1975). Wright complains that he was damaged when Amsouth represented to him that he would receive a bonus under the Management Incentive Program ("MIP") if he would meet certain agreed upon goals.

> Under present Alabama law, in order to succeed on a fraud or misrepresentation claim, a plaintiff must establish: (1) a false representation by the defendant concerning an

---

[1] Wright testifies, and Amsouth denies, that the duties assigned to Burks were the duties performed by Wright. In deciding a motion for summary judgment, this court must resolve all disputes of fact in favor of the non-moving party. For the purposes of this motion, the job duties are the same.

5

> existing material fact; (2) a representation that (a) the defendant knew was false when it was made, (b) was made recklessly and without regard to its truth or falsity, or (c) was made by telling the plaintiff that the defendant had knowledge that the representation was true, when the defendant did not have such knowledge; (3) reliance by the plaintiff on the representation; (4) that the plaintiff's reliance was reasonable under the circumstances; and (5) damage proximately resulting from the plaintiff's reliance.

*Bailey v. Rowan*, 751 So. 2d 504, 507 (Ala. 1999)(internal citation omitted). Even though fraud sounds in tort, Amsouth responds to Wright with arguments designed to defeat a contract claim. In his brief in opposition to Amsouth's motion for summary judgment, Wright lists as the elements of fraud: "(1) that the defendant made a false representation; (2) of a material existing fact (3) on which the plaintiff reasonably relied; and (4) which proximately caused injury or damage to the plaintiff." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 24 *citing Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d. 774, 776 (Ala. 1998)). If only Wright had continued reading *Goodyear*, he would have discovered that the next sentence reads "[a]lso, to support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff." *Goodyear* at 776.

In order to survive summary judgment on this count, Wright must muster enough evidence to present a triable issue of fact

for each of these elements. Wright fails on the "knowing deception" element. Assuming that Amsouth's statements were false, Wright has not offered any evidence to show that Amsouth knew, at the time they were made, of their falsity, that they were made recklessly with regard to their falsity, or that they were made by telling Wright it was true when Amsouth knew that they were not true. Having failed to meet its burden on this element, summary judgment is due to be granted on the fraud claim.

The final remaining claim is Wright's claim under §6-11-27 of the Code of Alabama. The relevant section of the statute reads:

> (a) A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer or master unless the principal, employer or master either:(i) knew or should have known the unfitness of the agent, employee, or servant and employed him or continued to employ him, or used his services without proper instruction with a disregard of the safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant, or employee were calculated to or did benefit the principal, employer or master, except where the plaintiff knowingly participated with the agent, servant or employee to commit fraud or wrongful conduct with full knowledge of the import of this act.

§6-11-27 Code of Alabama (1975). Without reaching the question vigorously debated by the parties of whether §6-11-27 creates a new cause of action or merely defines the requirements for

7

recovering punitive damages in some actions, this court recognizes that any possible tort manufactured by §6-11-27 is parasitic. Having found that the host tort here is fatally flawed, the parasite too expires.

For reasons set forth herein, Amsouth is entitled to summary judgment on all claims in this action.

DONE this 27th day of November, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE